# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ROFF ARDEN and BOBBI ARDEN, adult husband and wife,<br><br>Appellants,<br><br>v.<br><br>FORSBERG & UMLAUF, P.S., a Washington State professional services corporation; JOHN HAYES and "JANE DOE" HAYES, adult Washington State residents including any marital community; WILLIAM "CHRIS" GIBSON and "JANE DOE" GIBSON, adult Washington State residents including any marital community; and DOE DEFENDANTS I through V,<br><br>Respondents. | No. 46991-0-II<br><br><br><br>PUBLISHED OPINION |

MAXA, J. — Roff and Bobbi Arden appeal the trial court's summary judgment order dismissing their claims against Forsberg & Umlauf, PS, and attorneys John Hayes and William "Chris" Gibson (collectively Forsberg) for breach of fiduciary duties and legal malpractice. Property and Casualty Insurance Company of Hartford (Hartford), the Ardens' homeowners' insurance company, retained Forsberg to defend a lawsuit filed against the Ardens. Hartford provided the defense under a reservation of its rights to deny coverage for any judgment entered against the Ardens.

First, the Ardens argue that Forsberg breached its fiduciary duty of loyalty to them by defending them in a reservation of rights context while also representing Hartford in other cases.

We hold as a matter of law that Forsberg's representation of the Ardens while it also represented Hartford did not create a conflict of interest and that Forsberg had no obligation to notify the Ardens that they represented Hartford in other cases. We also hold that there is no evidence that Forsberg breached its duty of disclosure regarding the potential conflicts of interest between Hartford and the Ardens.

Second, the Ardens argue that Forsberg breached its fiduciary duty of loyalty to them during settlement negotiations. We hold that (1) as a matter of law, Forsberg had no duty to the Ardens to persuade Hartford to accept the claimants' initial settlement offer; (2) there is no evidence that Forsberg breached a fiduciary duty regarding the Ardens' interest in a swift resolution of the lawsuit; (3) a question of fact exists as to whether Forsberg breached its duty to consult with the Ardens before rejecting settlement demands, but there is no evidence that any breach injured the Ardens; and (4) even if Forsberg had a duty to consult with the Ardens before making settlement offers, there is no evidence that Forsberg breached any such duty regarding its first settlement offer and that the breach of any duty for the second settlement offer injured the Ardens.

Third, the Ardens argue that Forsberg was negligent in requesting an extension of the start of settlement negotiations when they had an interest in a prompt settlement. We hold that there is no evidence that Forsberg was negligent regarding its judgment decision to extend the start of settlement negotiations.

Accordingly, we affirm the trial court's grant of summary judgment in favor of Forsberg on both breach of the fiduciary duty of loyalty and legal negligence and the denial of the Ardens' summary judgment motions.

FACTS

The Ardens and Wade and Anne Duffy were neighbors in Shelton. In December 2011, Roff Arden shot and killed the Duffys' puppy. He claimed that the shooting occurred after the puppy and another dog chased him and Bobbi down their driveway. The Mason County Sheriff's Office investigated, and referred the investigation to the prosecutor's office to pursue animal cruelty charges.

*Lawsuit and Tender of Defense to Hartford*

The Duffys filed suit against the Ardens in May 2012 after settlement negotiations broke down. The lawsuit apparently alleged that the Ardens were liable for (1) willful conversion of the dog, (2) malicious injury, (3) intentional or reckless infliction of emotional distress, and (4) gross negligence and willful or reckless property damage.[1] The Ardens requested insurance coverage for the lawsuit from Hartford under the liability portion of their homeowners' insurance policy. Hartford initially refused to defend the lawsuit based on an intentional act exclusion in its policy.

In October 2012, the Ardens retained new personal counsel, Jon Cushman. Cushman demanded that Hartford defend and indemnify the Ardens against the Duffy lawsuit because the complaint contained some negligence allegations. Hartford agreed to defend the Ardens. Hartford informed Cushman that it intended to defend under a reservation of its rights to deny coverage for any judgment, and Cushman stated that he was "ok" with Hartford's panel counsel[2]

---

[1] Neither party included a copy of the Duffys' complaint in the appellate record.

[2] "Panel counsel" generally refers to an attorney who is regularly retained by a particular insurer.

defending the case. Clerk's Papers (CP) at 320. Cushman informed the Ardens that Hartford had agreed to defend but under a reservation of rights, and that he would continue to provide coverage advice to Arden and to monitor the defense. However, Hartford did not send the Ardens a letter reserving its rights to deny coverage until January 30, 2013.

*Forsberg Representation*

Hartford retained Forsberg to represent the Ardens, and Forsberg assigned attorneys Hayes and Gibson to the case. Hartford was one of Forsberg's clients, and Hayes was one of the firm's partners who regularly worked on Hartford cases. Approximately 30 to 35 percent of Hayes's practice involved defending Hartford's insureds. He also had represented Hartford in coverage matters. A substantial part of Gibson's practice involved defending Hartford's insureds.

On November 27, 2012, Forsberg sent a letter to the Ardens informing them that Hartford had retained Forsberg to defend the Duffy lawsuit. The letter stated that Forsberg's representation was limited to defending the Ardens in the lawsuit and that Forsberg would not provide any insurance coverage advice to either Hartford or the Ardens. The letter also stated, "Unless instructed otherwise, we will assume that any settlement authority or instructions we receive from the Hartford to settle are given with your consent and will proceed accordingly." CP at 427. The letter did not inform the Ardens that Forsberg regularly defended Hartford's insureds and had also represented Hartford in coverage matters.

Gibson met with the Ardens in December. At the meeting, Gibson explained that he expected Hartford to issue a reservation of rights letter and that there could be a coverage dispute. He further explained that Forsberg's only role was as the Ardens' defense attorneys. He

4

told the Ardens that his goal was for Hartford to pay full indemnity for the lawsuit despite any reservation of rights.

*Settlement Negotiations*

Forsberg served discovery requests on the Duffys in early January 2013. On January 18, the Duffys made a settlement demand of $55,000 to both Cushman and Forsberg. The deadline to respond to the demand was January 28. Cushman immediately sent an email to Forsberg stating that the Ardens would accept the offer provided that Hartford pay the settlement. On January 22, Cushman also sent Forsberg and Hartford an email stating that the Ardens wanted to accept the offer provided that Hartford would pay and demanding that Hartford fund the settlement.

Hartford was not willing to settle the case for $55,000 at that time because it did not have discovery responses that would have provided documentation regarding the claimed damages and information about case value. Forsberg emailed Cushman that it had requested an extension of time to respond to the settlement demand until after the Duffys had responded to discovery requests. Hartford sent a similar email to Cushman. Forsberg later emailed Cushman and informed him that the Duffys had agreed to extend the time for responding to their settlement demand until two weeks after they answered discovery. The new projected settlement deadline was March 4. Cushman did not object to the extension at that time.

After receiving the Duffys' discovery responses, Forsberg prepared a detailed litigation report and case evaluation and provided a draft to Cushman for review before sending it to Hartford. Forsberg recommended that Hartford attempt to settle the case for up to $35,000. Cushman sent Forsberg an email with several substantive changes, and concluded, "I bet you can

settle the case for the $35,000 you estimate in value." CP at 693. Cushman did not tell Forsberg that he thought the value was too low or that he should recommend a higher settlement value to Hartford.

On March 4, Hartford informed Cushman that it planned to allow the deadline for the $55,000 demand to expire and then continue negotiations. On March 5, Forsberg informed Cushman by email that Hartford had given Forsberg settlement authority up to $35,000, and that they were going to start with an $18,000 offer. Cushman responded, "I hope you succeed. I will stay out of the loop. Keep me posted by copy on all offers and responses." CP at 714. Cushman also told the Ardens that Hartford was going to start with an $18,000 offer. Neither Cushman nor the Ardens objected to this offer. Roff Arden expected that the parties would negotiate back and forth and probably get the case settled for $35,000.

Forsberg conveyed an $18,000 settlement offer to the Duffys later on March 5. The Duffys initially rejected the counteroffer without extending a new offer. However, on March 12 Cushman contacted the Duffys' attorney directly and asked him to move to a mid-point. The attorney responded with an email to Forsberg and Cushman offering to settle for $40,000 if accepted by the end of the day on March 14. On March 14, Hartford informed Cushman that it would be allowing the $40,000 demand to expire and would make a counteroffer of $25,000. An hour after Hartford's email to Cushman, Forsberg communicated the $25,000 offer to the Duffys' attorney. Cushman did not object to this offer at the time, but he later argued that Hartford was acting in bad faith by not accepting the $40,000 demand.

6

Later on March 14, the Duffys' attorney sent an email to Forsberg and Cushman rejecting the $25,000 offer and stating that no new offers would be made. At that point, negotiations stopped.

*Criminal Charges*

On March 13, the Mason County Prosecuting Attorney charged Arden with one count of first degree animal cruelty with a firearm enhancement. The prosecutor was unaware of the Duffys' lawsuit until after he filed the information.

*Lawsuit Against Hartford and Forsberg*

On March 15, the Ardens filed a lawsuit against Hartford alleging that Hartford had acted in bad faith in handling their claim. The Ardens then amended their complaint to add Forsberg and Hayes as defendants and alleged that Forsberg had committed legal malpractice. The Ardens later filed a second amended complaint adding Gibson as a defendant and asserting a claim that Forsberg and its attorneys had breached their fiduciary duties.

The Ardens, Hartford, Forsberg, and the Duffys participated in mediation in August 2013. Hartford funded a settlement of the Duffys' lawsuit against the Ardens, the Duffys agreed to recommend to the prosecutor that criminal charges not be pursued, and the Ardens dismissed their claim against Hartford. The only matter not settled was the Ardens' claims against Forsberg, Hayes, and Gibson.

*Summary Judgment*

Both the Ardens and Forsberg filed multiple summary judgment motions regarding the Ardens' breach of fiduciary duty and legal negligence claims. The trial court granted summary

judgment in favor of Forsberg on all the Ardens' claims. The trial court denied the Ardens' summary judgment motions. The Ardens appeal the trial court's summary judgment orders.

ANALYSIS

A.     STANDARD OF REVIEW

We review a trial court's order granting summary judgment de novo. *Lyons v. U.S. Bank Nat'l Ass'n,* 181 Wn.2d 775, 783, 336 P.3d 1142 (2014). We review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Lakey v. Puget Sound Energy, Inc.,* 176 Wn.2d 909, 922, 296 P.3d 860 (2013).

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Dowler v. Clover Park Sch. Dist. No. 400,* 172 Wn.2d 471, 484, 258 P.3d 676 (2011). If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment. *Failla v. FixtureOne Corp.,* 181 Wn.2d 642, 649, 336 P.3d 1112 (2014), *cert. denied*, 135 S. Ct. 1904, (2015).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Lee v. Metro Parks Tacoma*, 183 Wn. App. 961, 964, 335 P.3d 1014 (2014). A moving defendant can meet this burden by showing that there is an absence of evidence to support the plaintiff's case. *Id.* The burden then shifts to the plaintiff to come forward with sufficient evidence to establish the existence of each element of the plaintiff's case. *Id.* If the plaintiff does not submit such evidence, summary judgment is appropriate. *Id.*

B.     ATTORNEY'S FIDUCIARY DUTIES – RESERVATION OF RIGHTS DEFENSE

1.     General Principles

An attorney owes fiduciary duties to his or her client.  *VersusLaw, Inc. v. Stoel Rives, LLP*, 127 Wn. App. 309, 333, 111 P.3d 866 (2005).  Breach of a fiduciary duty imposes liability in tort.  *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wn. App. 412, 433, 40 P.3d 1206 (2002).  The plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that fiduciary duty, (3) resulting injury, and (4) that the breach of duty proximately caused the injury.  *Id*. at 433-34.

The Rules of Professional Conduct (RPC) generally outline an attorney's fiduciary duties.  *See Eriks v. Denver*, 118 Wn.2d 451, 457, 824 P.2d 1207 (1992); *Cotton v. Kronenberg*, 111 Wn. App. 258, 265-66, 44 P.3d 878 (2002).  Whether a fiduciary duty exists under the RPCs and whether an attorney has breached a fiduciary duty are questions of law.  *See Eriks*, 118 Wn.2d at 457-58.

2.     Duty of Loyalty Under the RPCs

The Ardens allege that Forsberg breached its fiduciary duty of loyalty to them.  The RPCs contain two rules addressing the duty of loyalty that potentially apply when an insurer retains an attorney to defend its insured.  First, RPC 1.7 provides:

> (a)  Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:
> (1)  the representation of one client will be directly adverse to another client; or
> (2)  there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

RPC 1.7(b) states that if a concurrent conflict of interest exists, a lawyer may represent a client if "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client" and "each affected client gives informed consent, confirmed in writing." RPC 1.7(b)(1), (4).

Second, RPC 5.4(c) states:

> A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.

*See also* RPC 1.8(f)(2) ("A lawyer shall not accept compensation for representing a client from one other than the client unless: . . . (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship").

3. Defense Attorney Duties under *Tank*

In *Tank v. State Farm Fire & Casualty Co.*, the Supreme Court adopted specific criteria regarding the fiduciary duty of loyalty for insurer-retained attorneys defending insureds when the insurer is providing a defense under a reservation of rights to deny coverage. 105 Wn.2d 381, 388, 715 P.2d 1133 (1986). First, the court emphasized that a defense attorney owes a duty of loyalty to the insured/client, not to the insurer, consistent with RPC 5.4(c). *Id.*

> In a reservation of rights defense, RPC 5.4(c) demands that counsel understand that he or she represents only the *insured*, not the company. . . . '[T]he standards of the legal profession require undeviating fidelity of the lawyer to his client. No exceptions can be tolerated.

*Id.* (quoting *Van Dyke v. White*, 55 Wn.2d 601, 613, 349 P.2d 430 (1960).

Second, a defense attorney owes a "duty of full and ongoing disclosure to the insured." *Tank*, 105 Wn.2d at 388. This duty includes three aspects: (1) "potential conflicts of interest between insurer and insured must be fully disclosed and resolved in favor of the insured," and the

10

dictates of RPC 1.7 must be strictly followed; (2) "all information relevant to the insured's defense, including a realistic and periodic assessment of the insured's chances to win or lose the pending lawsuit, must be communicated to the insured"; and (3) "*all* offers of settlement must be disclosed to the insured as those offers are presented" and "the insured must be fully apprised of all activity involving settlement, whether the settlement offers or rejections come from the injured party or the insurance company." *Id*. at 388-89.[3]

C.    DEFENSE ATTORNEY'S RELATIONSHIP WITH INSURER

The Ardens argue that Forsberg breached its fiduciary duty of loyalty to them by representing them in the Duffy lawsuit despite its long-standing relationship with Hartford that included representing Hartford in coverage cases. The Ardens claim that this relationship created a conflict of interest for Forsberg as a matter of law because Hartford was defending under a reservation of rights to deny coverage. We disagree.

1.    Expert Disagreement

Whether Forsberg's representation of Hartford in coverage cases precludes Forsberg from defending Hartford's insured in a reservation of rights case is a question of first impression in Washington. The parties submitted expert declarations that disagreed on this issue. The Ardens' expert was John Straight, a Seattle University law professor, who stated that Forsberg's representation of Hartford in coverage cases and its long-time attorney-client relationship with Hartford created a nonwaivable conflict of interest. Forsberg's expert was Jeffery Tilden, an

---

[3] The Ardens also argue that the right to a defense is a valuable asset, and that defense counsel becomes a "trustee" over the insurance defense asset and owes the insured the duties of a trustee. However, they cite no authority to support this novel argument. We decline to hold that Forsberg somehow became a trustee by undertaking a reservation of rights defense.

experienced insurance coverage attorney, who stated that it is a reasonable, common practice for attorneys to represent an insurer in coverage matters and also represent that insurer's insureds in other matters.

Because the breach of a fiduciary duty is a question of law, the trial court – and an appellate court on review – are free to disregard expert opinions regarding whether an attorney has breached a fiduciary duty. *Eriks*, 118 Wn.2d at 458. Therefore, we are not bound by either opinion. *Id.* Instead, we acknowledge that there is a difference of opinion among experts on this issue.

Thomas Harris, a Washington insurance law commentator, stated in the third edition of his treatise that an insurer violates RPC 1.7 when it retains an attorney who represents the insurer as a current client to also represent its insured. THOMAS V. HARRIS, WASHINGTON INSURANCE LAW §11.02, at 11-3 to 11-4 (3d ed. 2010). However, in his 2015 cumulative supplement Harris deleted this statement, instead noting the difference of opinions on this issue. HARRIS, §11.02, at 27-28 (Supp. 2015).[4] In the supplement, Harris does not support either position.

To resolve the legal issue of whether Forsberg's representation of Hartford precluded Forsberg from representing the Ardens in a reservation of right context, we analyze RPC 1.7 and the *Tank* guidelines. We conclude that an attorney who represents an insurer in coverage cases is not automatically prohibited from representing that insurer's insured when the insurer reserves its right to deny coverage.

---

[4] The Ardens cite to WILLIAM T. BARKER AND CHARLES SILVER, PROFESSIONAL RESPONSIBILITIES OF DEFENSE COUNSEL (2014) and materials Barker prepared for an American Bar Association seminar. Because these materials do not specifically address Washington law, we do not find them persuasive.

2.    Conflict of Interest Under RPC 1.7

The Ardens argue that an attorney who represents an insurer has a conflict of interest under RPC 1.7 when representing that insurer's insured in a reservation of rights case. RPC 1.7(a) states that a concurrent conflict of interest exists only if (1) the representation of one client will be directly adverse to another client, or (2) there is a significant risk that the representation of one client will be materially limited by the attorney's responsibility to another client. Neither situation exists here.

First, Hartford's interests were not directly adverse to the Ardens' interests with regard to Forsberg's defense of the Duffy lawsuit. Hartford and the Ardens did have adverse interests with regard to coverage issues, but Forsberg made it clear that it did not represent either Hartford or the Ardens on those issues. Hartford's interests and the Ardens' interests were aligned on the defense aspect of the claim. Both were interested in winning the case or settling it.

Second, as long as the defense attorney follows the criteria outlined in *Tank*, there is not a significant risk that the attorney's representation of the insured will be materially limited by the attorney's representation of the insurer in other cases. A defense attorney handling a reservation of rights case knows that, under *Tank*, he or she represents only the insured, not the insurer, and owes a duty of loyalty to the insured that has no exceptions. *Tank*, 105 Wn.2d at 388. Because the *Tank* criteria form the foundation of any reservation of rights defense, a conflict of interest does not automatically arise under RPC 1.7(a)(2) in that context.[5]

---

[5] Our holding applies only to the argument that a conflict of interest *automatically* exists when an attorney defending under a reservation of rights also represents an insurer. A defense attorney still is subject to liability for breach of fiduciary duty under RPC 1.7(a)(2) if the facts actually show that the attorney's representation of the insured will be materially limited by the attorney's responsibilities to or relationship with the insurer.

3. *Tank* Rule

The Ardens advocate the adoption of a rule requiring an insurer defending under reservation of rights to retain an "independent" defense attorney who has no connection at all to that insurer. The California Court of Appeals adopted a similar rule shortly before our Supreme Court decided *Tank*. *See San Diego Navy Fed. Credit Union v. Cumis Ins. Society, Inc*., 162 Cal. App. 3d 358, 208 Cal. Rptr. 494 (1984). In *Cumis*, the California court reasoned that an attorney retained to undertake a reservation of rights defense would represent both the insurer and the insured and therefore would have an irreconcilable conflict of interest. *Id*. at 499-506. As a result, the court held that in the absence of the insured's express consent to representation by an attorney connected to the insurer, an insurer defending under a reservation of rights must pay the reasonable cost of hiring independent counsel to defend the insured. *Id*. at 506.

In *Tank*, the Supreme Court implicitly rejected the *Cumis* rule. Instead of requiring insurers to retain independent counsel for a reservation of rights defense, the court emphasized that (1) insurers owed an enhanced obligation of fairness to insureds in the reservation of rights context, and (2) defense attorneys were required to follow specific criteria that centered on the recognition that only the insured was the attorney's client. *Tank*, 105 Wn.2d at 383, 387-88. In essence, the court ruled that, as long as defense attorneys satisfy the specific *Tank* criteria, an insurer-retained attorney does not violate his or her duty of loyalty to an insured.

This court addressed whether an attorney defending a reservation of rights case was required to be independent of the insurer in *Johnson v. Continental Casualty Co*., 57 Wn. App. 359, 788 P.2d 598 (1990). In *Johnson*, the insured argued that "when an insurer defends under a reservation of rights, a conflict of interest automatically arises requiring that the insurer pay for

independent counsel chosen by the insured." *Id*. at 361. The court noted that the insured was relying on the *Cumis* case. *Id.* at 361 n.2.

This court expressly rejected the insured's argument that a conflict of interest between the insurer and the insured automatically arises when the insurer is defending under a reservation of rights. Citing *Tank*'s imposition of enhanced obligations of fairness on the insurer, the court stated that "no actual conflict of interest necessarily exists in a reservation of rights defense." *Id* at 361. The court summarily rejected the insured's assertion that the insurer's refusal to provide coverage for certain claims "creates a conflict of interest for the attorney selected by the [insurer] to defend against the above referenced claims." *Id*. at 362. The court concluded:

> In Washington, there is simply no presumption, as Johnson urges, that a reservation of rights situation creates an automatic conflict of interest. Therefore, the insurer has no obligation *before the fact* to pay for its insured's independently hired counsel.

*Id*. at 363.

Consistent with *Tank* and *Johnson*, Hartford's retention of Forsberg to defend the Ardens under a reservation of rights did not create a conflict of interest even though Forsberg represented Hartford in other cases. Accordingly, we hold as a matter of law that Forsberg did not breach its fiduciary duty of loyalty by undertaking the reservation of rights defense of the Ardens.[6]

---

[6] Our holding does not insulate defense attorneys from liability for breach of duty of loyalty. The Supreme Court in *Tank* suggested that if an attorney defending a reservation of rights case failed to comply with the specific criteria outlined in that case, that attorney would be subject to liability. 105 Wn.2d at 387-88. This court made the same observation in *Johnson*. 57 Wn. App. at 363. We hold only that a defense attorney's relationship with the insurer does not *automatically* prohibit that attorney from undertaking a reservation of rights defense.

15

D.     DEFENSE ATTORNEY'S DISCLOSURE REQUIREMENTS

The Ardens argue that Forsberg breached its fiduciary duty of loyalty by failing to give them notice of its long-standing relationship with Hartford and of potential conflicts of interest arising from Hartford's reservation of rights.  We disagree.

1.     Disclosure of Attorney's Relationship with Insurer

The Ardens claim that Forsberg had a duty to inform them of its relationship with Hartford.  Under RAP 1.7(b)(4), if a concurrent conflict of interest exists the attorney must obtain informed consent for continued representation, which necessarily would require disclosure of the conflict of interest.  However, as discussed above, an attorney's undertaking of a reservation of rights defense even when the attorney represents the insurer in other cases does not automatically create a conflict of interest under RPC 1.7(a).  Therefore, Forsberg had no obligation under RPC 1.7 to disclose to the Ardens its relationship with Hartford.[7]

Further, nothing in *Tank* requires a defense attorney to disclose his or her relationship with the insurer to the insured.  As discussed below, *Tank* requires a defense attorney to follow the dictates of RPC 1.7, disclosing any conflict of interest between the insured and the insurer defending under a reservation of rights.  105 Wn.2d at 388.  But neither RPC 1.7 nor *Tank* impose a requirement that a defense attorney disclose its relationship with that insurer.

---

[7] The Ardens cite *In re Disciplinary Proceeding Against Marshall*, in which the Supreme Court suggested that consultation and consent is required under RPC 1.7(b) any time a *potential* conflict of interest exists.  160 Wn.2d 317, 336, 157 P.3d 859 (2007).  However, in *Marshall* the attorney represented multiple plaintiffs in the same discrimination lawsuit.  *Id.* at 324.  Under *Tank* the law is clear that Forsberg's only client in the Duffy lawsuit was the Ardens.  105 Wn.2d at 388.

The better practice for attorneys handling a reservation of rights defense may be to inform their clients if they have a long-standing relationship with the insurer and represent the insurer in other cases. But we hold that, as a matter of law, Forsberg had no fiduciary duty to provide such notice to the Ardens.

2. Disclosure of Reservation of Rights Process

One requirement for attorneys handling a reservation of rights defense is that "potential conflicts of interest between insurer and insured must be fully disclosed and resolved in favor of the insured." *Tank*, 105 Wn.2d at 388. Further, the attorney generally must explain the reservation of rights process; i.e., that the insurer could refuse to indemnify the insured even though it was providing a defense and that the attorney represents only the insured and not the insurer.

Forsberg's initial representation letter did not completely fulfill Forsberg's duty of disclosure under *Tank*. The letter explained that Forsberg was not representing either Hartford or the Ardens with regard to coverage but it did not explain the ramifications of the reservation of rights defense.[8] However, Gibson testified that he met with the Ardens in December and discussed the relationship between Hartford, Forsberg and the Ardens.

> In the meeting that I had with them early in the case I explained [the insurer/attorney/insured relationship] as best I could knowing that they're not sophisticated, but I had to allay I think some presumed concerns that almost all of my clients have in insurance defense situations. They want to know who I'm working for and they want to know who's [sic] interest I'm protecting, and I explain the relationship and how in a [*Tank*] case my duties are solely to you. . . . I specifically said that, that my practice is to try to get the insurance company to pay

---

[8] At the time Forsberg sent the November 27, 2012 letter, Hartford had not yet issued a reservation of rights letter to the Ardens. Forsberg's failure to address reservation of rights issues in the retention letter may be more excusable than if a reservation of rights letter already had been issued.

17

everything and have you not pay a penny out of your pocket, even in a reservation of rights case.

CP at 173.

The record shows that Gibson discussed with the Ardens the parameters and scope of Forsberg's defense of them under a reservation of rights. Nothing in the record indicates that Gibson failed to explain the reservation of rights process to them. Further, the Ardens had personal counsel who was engaged in the reservation of rights process and who presumably provided the Ardens with information and legal advice about that process. Therefore, we hold that there is no evidence that Forsberg breached its duty of disclosure under *Tank* regarding the potential conflicts of interest between Hartford and the Ardens.

E.     DEFENSE ATTORNEY'S DUTIES IN SETTLEMENT NEGOTIATIONS

The Ardens argue that Forsberg breached its fiduciary duty of loyalty to them by placing Hartford's interests above theirs and by failing to consult with them before rejecting the Duffys' settlement demands and making counteroffers. We hold that summary judgment was proper on these claims.

1.     Insured's Involvement in Settlement

Most automobile and homeowners' insurance policies provide the insurer with control over settlement. But in the reservation of rights context, there are two exceptions to the insurer's right to control settlement. First, the Supreme Court in *Tank* recognized that the insured has the right to decide whether to settle a lawsuit defended under a reservation of rights. 105 Wn.2d at 389. Although unstated, the court clearly was referring to the situation where the insured agrees to pay the settlement amount. *See id.* (stating that "[i]n a reservation of rights defense, it is the insured who may pay any judgment or settlement"). Therefore, if the insurer defends under a

reservation of rights, the insured under certain circumstances has the ability to settle the case at his or her own expense without defeating coverage even when the insurer does not consent. *See Mut. of Enumclaw Ins. Co. v. T&G Constr., Inc.*, 165 Wn.2d 255, 268-69, 199 P.3d 376 (2008).

Second, under certain circumstances the insured can enter into an agreement with the plaintiff to execute a stipulated judgment. This type of agreement usually involves an assignment of the insured's bad faith claims against the insurer in exchange for the claimant's covenant not to execute on the judgment against the insured. *See, e.g., Bird v. Best Plumbing Grp., LLC*, 175 Wn.2d 756, 764-65, 287 P.3d 551 (2012).

2. Persuading Hartford to Accept Settlement

The Ardens suggest that Forsberg breached its fiduciary duty of loyalty to them by not attempting to persuade Hartford to fund the $55,000 settlement demand as the Ardens requested. We disagree.

First, a defense attorney clearly has an obligation to communicate an insured's request to settle to the insurer. *Tank*, 105 Wn.2d at 388-89. But the Ardens provide no authority to support imposing a duty on the defense attorney to attempt to *persuade* the insurer to settle the case. Such a duty would be inconsistent with the defense attorney's role in a reservation of rights defense. When coverage is disputed, an insurer's decision to settle necessarily involves an evaluation of the strength of its coverage defenses. Imposing a duty on defense counsel to attempt to persuade an insurer to settle would require that attorney either to argue the insured's position on coverage or advise the insurer on coverage issues, both of which would give rise to actual conflicts of interest.

Second, when as here the insured has personal counsel who is actively involved in the case, there is no reason for defense counsel to become involved in persuading the insurer to settle. Personal counsel is in the best position to advocate for settlement with the insurer. Cushman did so here, telling Hartford, "Let me be perfectly clear. Arden's [sic] want to accept this offer provided it is paid by carrier. Arden's [sic] demand the Hartford fund this settlement and relieve them [of] all exposure to liability." CP at 258. Later, Cushman vigorously argued that Hartford was acting in bad faith by not settling the case for $40,000.

We decline to impose a fiduciary duty on Forsberg to attempt to persuade Hartford to settle for an amount the Ardens demanded. The defense attorney's duty is to give a fair evaluation of the liability and damages aspects of the case without regard to any coverage issues. *See Tank*, 105 Wn.2d at 388-89. Forsberg met that duty here.

3. Conflict of Interest Regarding Quick Settlement

The Ardens argue that Forsberg breached its fiduciary duty of loyalty to them because it failed to recognize the conflict between their interest in swiftly resolving the case and Hartford's deliberate negotiation strategy. We disagree because there is no evidence that there was such a conflict.

The Ardens assert that they were interested in a quick settlement of the Duffy lawsuit because of the pending decision on criminal charges and Roff Arden's problems with depression and post-traumatic stress disorder (PTSD). The Ardens claim that Hartford's settlement strategy was inconsistent with this interest. But there is no evidence that Hartford disagreed with seeking a quick settlement or attempted to slow down settlement discussions. Hartford did let the $55,000 demand expire, but then made a counteroffer the next day, March 5. When the Duffys

20

lowered their demand to $40,000 on March 12, Hartford responded with another offer two days later. Negotiations then broke down. The speed of these negotiations – multiple offers and counteroffers in less than 10 days – showed that Hartford, like the Ardens, was interested in a prompt resolution.

The start of negotiations was delayed approximately two months because Forsberg and Hartford were waiting for the Duffys' discovery responses, which were needed to evaluate the claim. However, as discussed below, Forsberg's request for an extension of time to respond to the $55,000 settlement demand was a reasonable judgment decision designed to further the Ardens' interest in having Hartford fund any settlement.

We hold that there is no evidence that Forsberg breached any fiduciary duty relating to the Ardens' interest in a quick settlement of the Duffy lawsuit.

4. Conferring with the Ardens Regarding Settlement Offers

As stated above, *Tank* requires defense counsel to keep the insured fully apprised of all activity involving settlement, including all settlement offers or rejections of offers from either the injured party or the insurer. 105 Wn.2d at 388-89. Here, there is no question that Forsberg informed the Ardens – through Cushman – of all settlement developments. However, the Ardens argue that Forsberg breached its fiduciary duty of loyalty because it did not consult with them before rejecting Duffys' settlement demands or making counteroffers. We hold that summary judgment was proper on these issues.

a. Rejecting Demands

As noted above, when the insurer defends under a reservation of rights the insured has the ability, under certain circumstances, to settle the case without the insurer's involvement or

21

consent. This means that when the claimant makes a settlement demand, defense counsel must consult with the insured before that demand is rejected or allowed to expire. *See Tank*, 105 Wn.2d at 388-89. Otherwise, it may be difficult for the insured to exercise its settlement rights.

Here, Forsberg did not expressly consult with the Ardens or Cushman before rejecting the Duffys' two settlement demands. Forsberg notified Cushman that it would reject the demands, but Forsberg never inquired whether the Ardens were interested in settling the case without Hartford's involvement. On the other hand, Forsberg's initial representation letter had stated, "Unless instructed otherwise, we will assume that any settlement authority or instructions we receive from The Hartford to settle the claims against you in this lawsuit are given with your consent and will proceed accordingly." CP at 427. And the Ardens had clearly stated that they were interested in settlement only if Hartford funded any settlement agreement. This competing evidence arguably created a question of fact as to whether Forsberg breached its duty to consult with the Ardens.

However, an attorney can be liable for a breach of fiduciary duty only if the breach caused some injury. *See Micro Enhancement*, 110 Wn. App. at 433-34. Here, there is no question of fact regarding whether this potential breach of duty injured the Ardens. There is no evidence in the record suggesting that if Forsberg had consulted with the Ardens, they would have been willing to fund the settlement themselves or otherwise negotiate a separate settlement with the Duffys. The only evidence is that the Ardens and Cushman were adamant that Hartford must fund any settlement. Therefore, as a matter of law Forsberg cannot be liable for its failure to confer with the Ardens before rejecting the settlement demands.

b. Making Counteroffers

The Ardens argue that Forsberg was required to consult with them before making counteroffers. They claim that Forsberg breached its fiduciary duty of loyalty to them by carrying out Hartford's instructions regarding settlement offers without considering their interests. We assume without deciding that Forsberg had a duty to consult with the Ardens regarding settlement strategy. However, we hold that the trial court correctly granted summary judgment in favor of Forsberg because the evidence shows that Forsberg did not breach any such duty regarding the $18,000 offer and that any breach regarding the $25,000 offer did not injure the Ardens.

The evidence is undisputed that Forsberg did consult with Cushman before making the $18,000 counteroffer. After Hartford gave Forsberg authority to settle for $35,000, Forsberg informed Cushman before communicating any offer to the Duffys that it was starting with an $18,000 offer. This consultation gave Cushman the opportunity to provide input on this decision. Cushman did not object to or disagree with Forsberg's approach. In fact, he told Forsberg that he hoped Forsberg would succeed and that he would stay out of the loop on settlement negotiations. Cushman also told the Ardens about the offer, and rather than objecting Roff Arden noted that this offer was just the starting point and expected the parties to negotiate back and forth. Therefore, there is no genuine issue of fact that Forsberg consulted with the Ardens before making the $18,000 offer.

For the $25,000 counteroffer, Forsberg gave Cushman some advance notice before making the offer an hour later. Cushman did not respond, so there was no actual discussion about the new counteroffer. But again, Cushman did not disagree with or object to this offer

even after the offer was made. Cushman's objection was not to the amount of the $25,000 counteroffer, but with Hartford's refusal to accept the $40,000 demand.

Even if Forsberg breached some duty to consult with the Ardens regarding settlement strategy, there is no evidence that that this breach injured the Ardens. The evidence shows that Hartford was not willing to pay more than $35,000 to settle the case and that the Duffys' were not willing to settle for any amount less than $40,000. As a result, even if Forsberg had consulted with the Ardens and had devised a different settlement strategy – or simply immediately offered $35,000 – there is no indication in the record that the case would have settled.

We hold that Forsberg was entitled to summary judgment on the alleged breach of its fiduciary duty of loyalty regarding the failure to consult with the Ardens before rejecting settlement demands and making counteroffers.

F.     LEGAL NEGLIGENCE – SETTLEMENT NEGOTIATIONS

The Ardens argue that Forsberg was negligent in not attempting to settle the Duffy lawsuit quickly in order to minimize Roff Arden's potential exposure to criminal charges and to avoid exacerbating his depression and PTSD. We hold that there is no evidence that Forsberg was negligent in making a judgment decision on extending the time for settlement negotiations.

1.    Legal Principles

To establish a claim of legal negligence, the plaintiff must prove four elements:

 (1) The existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred.

*Clark County Fire Dist. No. 5 v. Bullivant Houser Bailey PC*, 180 Wn. App. 689, 700-01, 324

P.3d 743 (2014) (quoting *Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992)). An

attorney satisfies the duty of care if he or she exercises " 'the degree of care, skill, diligence, and

knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in

the practice of law' in the state of Washington." *Clark County Fire*, 180 Wn. App. at 701

(quoting *Hizey*, 119 Wn.2d at 261).

> Under the attorney judgment rule,
>
> an attorney cannot be liable for making an allegedly erroneous decision involving honest, good faith judgment if (1) that decision was within the range of reasonable alternatives from the perspective of a reasonable, careful and prudent attorney in Washington; and (2) in making that judgment decision the attorney exercised reasonable care.

*Clark County Fire*, 180 Wn. App. at 704. "Merely providing an expert opinion that the judgment

decision was erroneous or that the attorney should have made a different decision is not enough;

the expert must do more than simply disagree with the attorney's decision." *Id.* at 706.

2.  Extending the Time for Settlement

The Ardens argue that they had an interest in a quick settlement of the Duffy lawsuit

because of the pending decision on criminal charges and Roff Arden's depression and PTSD and

that Forsberg committed legal malpractice by disregarding this interest. The Ardens appear to be

referring to Forsberg's decision to obtain an extension of time to respond to the Duffys' initial

$55,000 settlement demand when the Ardens had demanded that Hartford immediately agree to

settle for that amount. We disagree.[9]

---

[9] The trial court ruled that these circumstances created a question of fact regarding breach of duty, but that any breach caused no recoverable damages. Because our review is de novo, we are not bound by the trial court's ruling on breach of duty. And we can affirm on any basis

We assume, without deciding, that an attorney representing an insured in a reservation of rights case has an obligation to consider the insured's "personal" interests, even though they may not directly affect the merits of the case. Under *Tank*, only the insured is the defense attorney's client, and a defense attorney arguably cannot disregard his or her client's interests. However, a client may have many, sometimes competing, interests that the attorney must consider in the exercise of his or her professional judgment in defending the case. Under the attorney judgment rule, the question is whether an attorney's particular judgment decision is within the range of reasonable alternatives or whether the attorney was negligent during the decision-making process. *Clark County Fire*, 180 Wn. App. at 704.

Here, the Ardens had an interest in the prompt settlement of the case. However, they were not willing to settle unless Hartford funded the settlement. Therefore, the Ardens' predominant interest was having Hartford fund any settlement. When the Duffys made a settlement demand before providing their discovery responses, the Ardens' two interests conflicted. Without discovery responses, Hartford did not have enough information to evaluate the settlement demand. Therefore, without an extension of time there was no possibility that Hartford would agree to fund the $55,000 settlement demand.

The evidence shows that Forsberg made a judgment decision about the best way to obtain a settlement of the Duffy lawsuit with Hartford funding that settlement. Forsberg determined that the best strategy was to obtain an extension of time for responding to the Duffys' settlement demand until after Hartford had enough information to determine the settlement value of the

presented in the pleadings and record. *Wash. State Commc'n Access Project v. Regal Cinemas, Inc.*, 173 Wn. App. 174, 206-07, 293 P.3d 413 (2013).

claim. The Ardens presented no evidence that this decision was outside the range of reasonable alternatives from the perspective of a reasonable, careful, and prudent attorney in Washington or that Forsberg somehow failed to exercise reasonable care in making that judgment decision. Accordingly, we hold that there is no evidence that Forsberg was negligent in delaying the beginning of settlement negotiations.

## CONCLUSION

We affirm the trial court's grant of summary judgment in favor of Forsberg on both breach of the fiduciary duty of loyalty and legal negligence and the trial court's denial of the Ardens' summary judgment motions.

_____
MAXA, A.C.J.

We concur:

_____
MELNICK, J.

_____
SUTTON, J.