

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE SEP 1 4 2017

Fairhurst, C.J.
CHIEF JUSTICE

This opinion was filed for record

at 8:00 a.m. on Sept 14, 2017

Susan L. Carlson
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ROFF ARDEN and BOBBI ARDEN, adult husband and wife, | ) ) ) | No. 93207-7 |
| Petitioners, | ) ) ) | |
| v. | ) ) | En Banc |
| FORSBERG & UMLAUF, P.S., a Washington State professional services corporation; JOHN HAYES and "JANE DOE" HAYES, adult Washington State residents including any marital community; WILLIAM "CHRIS" GIBSON and "JANE DOE" GIBSON, adult Washington State residents including any marital community; and DOE DEFENDANTS I through V, | ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) ) ) | Filed SEP 1 4 2017 |

JOHNSON, J.—This case involves claims of breaches of fiduciary duty and legal malpractice against lawyers hired to defend insureds in a civil action where the insurance company provided the defense.[1] The insureds claim the lawyers violated their professional responsibilities by failing to disclose a potential conflict

---

[1] The Court of Appeals and the parties in their briefing characterized the issue as involving a defense provided under a reservation of rights. As discussed herein, this is not entirely accurate.

based on a long-standing relationship the law firm had with the insurance company in not only accepting cases representing insureds in civil cases, but also at some time representing the insurance company in coverage disputes. The insureds also claim the attorneys violated their professional responsibilities by failing to advise them of settlement negotiations and by taking settlement directions from the insurer.

The Court of Appeals affirmed the trial court's summary judgment dismissal and held that under the facts of this case, the Ardens failed to establish an actionable breach. *Arden v. Forsberg & Umlauf, PS*, 193 Wn. App. 731, 373 P.3d 320, *review granted*, 186 Wn.2d 1009, 380 P.3d 484 (2016). While we disagree with portions of the Court of Appeals' analysis, we affirm in result.

FACTS AND PROCEDURAL HISTORY

Roff and Bobbi Arden had homeowners insurance with Property and Casualty Insurance Company of Hartford (Hartford). In December 2011, Roff Arden, allegedly suffering a posttraumatic stress disorder attack, shot and killed a six-month-old Labrador puppy owned by his neighbors Wade and Ann Duffy. In June 2012, the Duffys sued the Ardens, alleging willful conversion, malicious injury, intentional infliction of emotional distress, and gross negligence. The Ardens sought liability coverage with their insurer, Hartford. Initially, Hartford

denied a defense and coverage based on the policy's intentional act exclusion. The Ardens thereafter retained private counsel, Jon Cushman, to seek coverage and to assert counterclaims against the Duffys. In November 2012, after communications from Cushman, Hartford agreed to defend and provide representation to the Ardens. Hartford appointed attorneys John Hayes and William "Chris" Gibson of the firm Forsberg & Umlauf PS to defend against the Duffys' claims. It was made clear that the appointed attorneys would not represent the Ardens in the counterclaims. Cushman remained as counsel in the lawsuit for those purposes.

Although no evidence exists nor do the Ardens claim in the record that Hayes, Gibson, or the Forsberg firm simultaneously represented the Ardens and Hartford, deposition testimony shows that both Hayes and Gibson (hereinafter referred to collectively along with Forsberg & Umlauf PS as "Forsberg") had a "long-standing relationship" with Hartford. *Arden*, 193 Wn. App. at 745. Forsberg had an established relationship with Hartford that included representing Hartford on coverage matters as well as representing Hartford's insureds. The record indicates Forsberg did not disclose its relationship with Hartford to the Ardens.

Procedurally, matters progressed relatively quickly. A few weeks after being appointed, the Ardens met with Forsberg and Cushman to discuss the case. It was agreed that a settlement plan would be developed by Forsberg, and it was

3

understood that the Ardens' position was that Hartford pay any settlement and that the Ardens contribute nothing.

Thereafter, discovery interrogatories were sent to the Duffys. On January 18, 2013, the Duffys presented a settlement demand of $55,000. Concerned about potential criminal exposure, the Ardens wished to resolve the case quickly. On behalf of the Ardens, Cushman informed Forsberg that the Ardens wished to accept the settlement offer and demanded that Hartford fully fund the settlement. Hartford refused and requested that an extension on the settlement offer be sought in order to obtain discovery from the Duffys. On January 30, 2013, Hartford issued a reservation of rights (ROR) letter.

On February 25, 2013, after discovery was completed, a phase litigation report was prepared by Forsberg, valuing the Duffys' claim up to $35,000. This report was communicated to Hartford and to Cushman, and was approved by Cushman. No objection to the plan was made.

On March 5, 2013, Hartford, after issuing the ROR, authorized a settlement offer of $18,000. The offer was rejected by the Duffys. Cushman then contacted the Duffys and requested a counteroffer. The Duffys responded with a $40,000 demand and indicated it was their final offer. Consistent with the Ardens' directions, Cushman again demanded that Hartford fund the settlement. On March

4

14, 2013, Hartford notified Forsberg that it would not fund a $40,000 settlement but authorized a counteroffer at $25,000, which Hartford would pay. While the settlement offers were communicated to Cushman and the Ardens, the Ardens assert that Forsberg did not obtain approval by them before they were presented to the Duffys. No settlement was reached at that time.

On March 15, 2013, the Ardens, still represented by Cushman, filed the instant suit against Hartford, asserting bad faith and other claims. Forsberg was later added as a defendant.[2] This suit is the subject of our review.

On March 19, 2013, the State filed criminal charges against Roff Arden, which prompted an agreement to suspend temporarily any work on the Duffy civil case. Based on being added as a defendant to the suit, Forsberg withdrew as the Ardens' attorneys from the Duffy lawsuit.

In August 2013, all parties participated in a "global mediation" affecting both cases. Hartford agreed to pay a settlement of $75,000 to the Duffys in the Duffy lawsuit.[3] The Duffy lawsuit, including the counterclaims, was dismissed. In the case before us, all bad faith and other claims against Hartford were resolved and dismissed.

---

[2] No copy of this complaint was included in the record in this case.

[3] The Duffys agreed to recommend to the prosecutor that criminal charges not be pursued, and Roff Arden obtained a diversion in lieu of criminal prosecution.

The claims not resolved in the mediation were the Ardens' claims against Forsberg. The Ardens continue to pursue those claims based on the assertions that Forsberg breached its fiduciary duties of disclosure and loyalty by failing to disclose its relationship with Hartford, and by failing to communicate and seek consent from the Ardens during settlement negotiations. Both parties made cross-motions for summary judgment. The trial court granted Forsberg's motions, denied the Ardens' motion, and dismissed the remainder of the Ardens' claims. The court held that there was no disqualifying conflict of interest and therefore no breach of fiduciary duty. In addition, it found no support for recovery of damages for either emotional distress or attorney fees, which were the remedies sought. The Ardens appealed.

On appeal, the Court of Appeals, Division Two, affirmed dismissal of the Ardens' claims. In its opinion, the court outlined defense counsel's duties under the Rules of Professional Conduct (RPC) and *Tank v. State Farm Fire and Casualty Co.*, 105 Wn.2d 381, 715 P.2d 1133 (1986). *Arden*, 193 Wn. App. at 744-45. The opinion reasoned that retained counsel in an ROR case who has a long-standing relationship with the insurer has no duty to disclose the relationship to its insured. Regarding settlement negotiation, the court held that while there may be disputed facts as to whether Forsberg breached its duty to consult with the Ardens,

there was no evidence that any breach caused injury and it affirmed the trial court's holding.

In the briefing before us, the Ardens request that this court clarify the duties of insurance defense counsel and the remedies available when those duties are breached. While we disagree somewhat with the Court of Appeals' discussion of the reasoning from *Tank* and the disclosure requirements under the RPCs, we reach the same conclusion.[4] Under the facts of this case, the Ardens fail to identify any recoverable damages caused by the alleged breaches.

## ANALYSIS

In a tort action against attorneys that alleges legal malpractice and breach of a fiduciary duty of loyalty during the representation, the plaintiff must allege and identify the source of the duty, that a breach occurred resulting in injury, and that the breach proximately caused the injury. The existence of a duty is a question of law, as is the question of whether an attorney's conduct violates the Rules of Professional Conduct. *See generally Eriks v. Denver*, 118 Wn.2d 451, 824 P.2d 1207 (1992).

---

[4] Four amici briefs were filed in this case by the Washington State Association for Justice Foundation, the Associated General Contractors of Washington, the Washington Defense Trial Lawyers, and the Federation of Defense and Corporate Counsel.

Here, the Court of Appeals and the parties in their briefings characterized the issue as involving a defense provided under an ROR, citing *Tank*. The record does not entirely support that approach. *Tank* involved a suit brought against an insurance company by an insured where the insurance company provided the defense attorneys, while denying the claim was covered under the policy, and reserved its right to contest coverage. The underlying case proceeded to trial, and judgment was entered against the insured. The claim itself was found to be excluded from coverage under the policy. The plaintiff, Tank, argued that State Farm failed to make reasonable efforts to settle the underlying suit and that State Farm subordinated Tank's interests to its own by structuring a defense that would absolve State Farm of liability.

*Tank* differs from the situation presented here in several respects. First, *Tank* involved a situation where at the outset of the case, State Farm provided a defense under an ROR to contest coverage. The opinion expressed concerns based on the inherent conflict in those circumstances between the insured's interests and the interests of the insurer. Here, Hartford initially did not issue an ROR, instead issuing the ROR later during the representation.

Second, in *Tank*, the court held that under a true ROR, the insured must decide whether to settle the lawsuit because it is the insured who may pay any judgment or

settlement. Because of the insured's potential liability, the court detailed specific duties of insurance companies and defense counsel.[5] The court held that State Farm fully investigated the incident, retained separate counsel to represent the company and separate counsel for Tank, and fully informed Tank of all settlement activity. The court also held that there was no evidence to suggest that the company engaged in actions that demonstrated greater concern for its own interests than for Tank's. In the

---

[5] "First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries. Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the *insured* is the client. Third, the company has the responsibility for fully informing the insured not only of the reservation of rights defense itself, but of *all* developments relevant to his policy coverage and the progress of his lawsuit. Information regarding progress of the lawsuit includes disclosure of all settlement offers made by the company. Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.

"In addition to the above specific criteria to be met by the company, defense counsel retained by insurers to defend insureds under a reservation of rights must meet distinct criteria as well. First, it is evident that such attorneys owe a duty of loyalty to their clients. Rules of Professional Conduct 5.4(c) prohibits a lawyer, employed by a party to represent a third party, from allowing the employer to influence his or her professional judgment. In a reservation of rights defense, RPC 5.4(c) demands that counsel understand that he or she represents only the *insured*, not the company. As stated by the court in *Van Dyke v. White*, 55 Wn.2d 601, 613, 349 P.2d 430 (1960), '[t]he standards of the legal profession require undeviating fidelity of the lawyer to his client. No exceptions can be tolerated.'

"Second, defense counsel owes a duty of full and ongoing disclosure to the insured. This duty of disclosure has three aspects. First, potential conflicts of interest between insurer and insured must be fully disclosed and resolved in favor of the insured. The dictates of RPC 1.7, which address conflicts of interest such as this, must be strictly followed. Second, all information relevant to the insured's defense, including a realistic and periodic assessment of the insured's chances to win or lose the pending lawsuit, must be communicated to the insured. Finally, *all* offers of settlement must be disclosed to the insured as those offers are presented. In a reservation of rights defense, it is the insured who may pay any judgment or settlement. Therefore, it is the insured who must make the ultimate choice regarding settlement. In order to make an informed decision in this regard, the insured must be fully apprised of all activity involving settlement, whether the settlement offers or rejections come from the injured party or the insurance company." *Tank*, 105 Wn.2d at 388-89 (alteration in original).

9

end, Tank decided to take the case to trial and the court found that Tank had committed an intentional tort, which absolved State Farm of liability. Because Tank made a fully informed decision not to settle the lawsuit, the court held that State Farm did not breach its duty of good faith.

In contrast here, Hartford actively participated in settlement negotiations and advanced settlement offers intended to prevent judgment against the Ardens. Although reserving its right to contest coverage, Hartford authorized settlement offers and evidently agreed to the settlement theory. The "inherent" conflict of interest concern in *Tank* did not fully materialize. The Ardens' interests (and directions) authorized settlement conditioned on Hartford paying, which was consistent with Forsberg's actions. The fact that settlement was initially unsuccessful does not establish a breach occurred in attempting to settle, since the Ardens were not being obligated to contribute to any settlements being offered. Certainly, it is true that in a case where an attorney is offering his or her client's funds in settlement negotiations, the client must be informed and approve that action. But that is not what occurred here—Hartford authorized the funding for settlement. In this case, the Ardens cite no case supporting a heightened standard or identify how any alleged conflict negatively impacted their interests.

10

To the extent that *Tank* informs this case and defense counsel's duty of good faith, the record shows that like State Farm in *Tank*, Forsberg fully investigated the incident, informed the Ardens that it represented only the Ardens, and fully informed the Ardens of all settlement activity. We find no evidence to suggest that Forsberg engaged in actions that demonstrated greater concern for Hartford's interests than for the Ardens'.

That conclusion, though, does not end the analysis. The Ardens cite *Tank* and RPC 1.7 to support a duty of disclosure in situations where conflicts may exist or arise. RPC 1.7 emphasizes the significance of the responsibility of counsel to advise clients. RPC 1.7(a) provides:

> [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

RPC 1.7(a)(2) states that a concurrent conflict of interest exists if "a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." There is no evidence here that established a concurrent representation or actual conflict at the outset. However, the phrase

11

"significant risk" underscores that this inquiry does not require a fully materialized conflict, but rather looks to the potential for conflict. In insurance cases where coverage is disputed, *Tank* recognizes the risk of potential conflicts and notes that the defense should be closely scrutinized. Under the rule, an attorney with an established relationship with the insurer could be "materially limited" in his or her ability to represent solely the interests of the insured.

RPC 1.7(b) addresses when counsel may proceed with representation if a concurrent conflict of interest exists. In relevant part, counsel may proceed if "(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; . . . and (4) each affected client gives informed consent, confirmed in writing." RPC 1.7(b). Prior consent will generally be important before undertaking representation. But where no prior consent is given, a claimed violation of the rule does not support a claim for damages without more.

The Ardens are essentially urging a rule that Forsberg was disqualified from representation based on its past involvement with Hartford, and they argue that since no consent was given, they are entitled to damages. We reject the suggestion advanced that wherever a previous relationship between the insurer and retained counsel exists, a per se disqualification rule is supported. We have no concerns recognizing the rule requiring disclosure of conflicts, potential or actual, in the context

12

of attorneys hired by insurance companies to represent insureds' interests in civil litigation, whether such representation is provided under an ROR or not. These same responsibilities exist in the context of dual representation. *See generally Eriks*, 118 Wn.2d 451. However, a claimed violation of the responsibility to disclose is not controlling in determining *liability* for claimed breach of fiduciary duties, which necessarily focuses on negligence in the representation and, importantly, resulting damages.

Here, the allegations are that Forsberg failed to disclose its relationship with Hartford to the Ardens. While the record discloses that Gibson discussed what a defense under an ROR looks like, he admitted that "[t]here was no discussion about . . . the fact that Forsberg represents . . . Hartford on unrelated cases on coverage matters." Verbatim Report of Proceedings (Sept. 26, 2014) at 62. RPC 1.7(a)(2) prohibits an attorney from representing two different clients if there is a "significant risk" that the lawyer's responsibilities to one of the clients will materially limit the lawyer's responsibilities to the other client. But the lawyer may still represent both clients if four conditions are met: the lawyer reasonably believes that it will be possible to represent both clients competently and diligently, the representation is not prohibited by law, the clients are not directly adverse to one another, and the clients give informed consent after adequate disclosure of the relationships. RPC 1.7(b).

Applying RPC 1.7 here, if there was a "significant risk" that representation of both the Ardens and Hartford would "materially limit" Forsberg's representation of Hartford, Forsberg was required to disclose to the Ardens its relationship with Hartford and obtain informed consent to the dual representation. RPC 1.7 would also require that Forsberg "reasonably believe[]" that it could competently and diligently represent both clients. These requirements—ascertaining "significant risk," material limits on representation, "reasonabl[e] belie[f]," and informed consent—would generally require trial and expert opinion for resolution and could not usually be decided on summary judgment.

The duty of care requires attorneys to "exercise the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law" in Washington. *Hizey v. Carpenter*, 119 Wn.2d 251, 261, 830 P.2d 646 (1992). The Ardens presented expert testimony by Professor John Strait concerning the relevant standard of care. Professor Strait concluded that Forsberg's failure to disclose Forsberg's relationship with Hartford was "not within the range of choices a reasonable, careful, and prudent attorney in Washington would adopt."[6] Clerk's Papers (CP) at 421. Forsberg disagreed and

---

[6] While Professor Strait cited the RPCs in general and RPC 1.7 in particular, he emphasized that his conclusions concerning the ethics standards were distinct from his conclusions concerning the appropriate standard of care. Clerk's Papers at 915-16; *see LK*

14

presented its own expert, Jeffrey Tilden. Tilden concluded that Forsberg's actions "were within the range of reasonable alternatives." CP at 364. These conflicting expert opinions will generally give rise to a genuine issue of material fact, precluding summary judgment on the question of breach.

However, this conflict over the duty of care does not mean that the trial court erred in granting summary judgment on a different issue. As stated above, the plaintiff is also responsible for presenting evidence that the alleged breach of the duty of care damaged the Ardens. *Hizey*, 119 Wn.2d at 260-61. Even assuming that a breach of duty exists, summary judgment is appropriate where the plaintiff fails to present evidence that the plaintiff suffered legally recoverable damages.

Damages

The Ardens claim damages based on the arguments that Forsberg breached two fiduciary duties: (1) a duty to disclose its relationship with Hartford and (2) a duty of loyalty by failing to consult with the Ardens regarding settlement negotiation. Suppl. Br. of Appellants at 9-14. The Ardens seek damages on two grounds: (1) disgorgement of fees received by Forsberg for its representation and (2) emotional distress damages based on a trustee theory. Suppl. Br. of Appellants at 14-19. The trial court summary judgment order concluded that damages sought based on claims of

_____

*Operating, LLC v. Collection Grp., LLC*, 181 Wn.2d 48, 90, 331 P.3d 1147 (2014) ("Unquestionably, the RPCs do not purport to set a standard for civil liability.").

recovery of attorney fees or emotional distress failed as a matter of law. The Ardens continue to challenge that decision here.

As to the disgorgement theory, the Ardens argue that they are entitled to disgorgement of fees by Forsberg because Forsberg's breaches of fiduciary duty constituted "gross misconduct." Suppl. Br. of Appellants at 15. They rely heavily on the general principle that a breach of ethical duties may result in denial or disgorgement of fees, as was recognized in *Eriks*, 118 Wn.2d at 462-63. We disagree.

In *Eriks*, attorney William Denver was hired to provide joint legal defense for all investors and promoters in audits before the federal Internal Revenue Service and in tax court cases. At the time Denver undertook representation, he knew that his investor clients potentially could have civil claims against his promoter clients. Denver discussed all his potential conflicts of interest with his promoter clients but did not do so with his investor clients. When issues arose, Denver continued to represent the investors without advising them of their rights. He later advised the investors to obtain independent legal counsel if they had questions about remedies they might have against the promoters. This court affirmed disgorgement of fees that the investors paid.

While *Eriks* has language relied on in the Ardens' argument, *Eriks* involved a situation where the court held that the investors were entitled to recover (disgorge) the

fees they had paid because the attorney subordinated their interests, causing harm. The case supports the rule that an attorney cannot retain fees paid by a client where the attorney has violated the duty of loyalty and where, in essence, the client does not receive the benefit from the representation. The Ardens cite no authority that permits them to collect fees that they never paid, and *Eriks* does not support that result. Since the Ardens paid no fees, there is nothing to disgorge.

The Ardens also introduce a novel trust theory wherein the relationship between the insurer, the insured client, and defense counsel is a "'resulting trust.'" Suppl. Br. of Appellants at 18. They argue that somehow, defense counsel becomes trustee over the insurance defense asset and owes the insured the duties of a trustee. In advancing this argument, no case authority or any other principle is identified to support the argument. As did the Court of Appeals, we reject this argument.

The Ardens claim that being without a loyal advocate defending them in the case is, in itself, an injury for which they are entitled to a remedy. Suppl. Br. of Appellants at 14. The Ardens vaguely claim "emotional distress damages and other remedies to make Ardens whole and prevent Forsberg from benefitting from its breach."[7] Suppl. Br. of Appellants at 16. While the Court of Appeals expressed

---

[7] It is unclear whether the Ardens seek emotional distress damages under a legal malpractice theory. If they are, *Schmidt v. Coogan*, 181 Wn.2d 661, 335 P.3d 424 (2014) (plurality opinion), establishes that emotional distress damages are not legally available.

concern regarding Forsberg's lack of communication in settlement negotiations with the Ardens, the Ardens fail to assert any facts to establish this caused any injury. The record establishes that as to settlement, Forsberg, Cushman, and the Ardens had agreed in the initial settlement strategy that Hartford fund the entire settlement. Throughout negotiations, Forsberg was advancing the Ardens' directions that Hartford pay any settlement. The record shows that settlement offers authorized by Hartford were understood to be authorized by the Ardens.[8] As the Court of Appeals' decision notes—there is no evidence to suggest that if Forsberg had consulted with the Ardens a different result would have occurred. *Arden*, 193 Wn. App. at 756. In the end, Hartford ended up funding the settlement. The Ardens have failed to establish damages.

---

[8]The letter of representation sent to the Ardens stated that "[u]nless instructed otherwise, we will assume that any settlement authority or [settlement] instructions we receive from . . . Hartford to settle the claims against you in this lawsuit are given with your consent." CP at 427. Given the Ardens' directions to Forsberg, it would be more concerning if the offers were not presented to the Duffys.

We affirm the Court of Appeals.

_____ Johnson, J.

WE CONCUR:

_____     Wiggins, J.
                            _____

Madsen, J.                  _____

Owens, J.                   _____

_____     Yu, J.

19

*Arden v. Forsberg & Umlauf, P.S., et al.*

No. 93207-7

STEPHENS, J. (concurring)—I agree with the majority that the superior court properly dismissed Roff and Bobbi Arden's claims against Forsberg & Umlauf PS because there is no support for allowing recovery of emotional distress damages or attorney fees in this case. On that basis—failure to establish damages—our analysis should end. I cannot join the majority opinion to the extent it discusses the purported duties owed by Forsberg to the Ardens based on the unsupported conclusion that Property & Casualty Insurance Company of Hartford (Hartford) was not defending the Ardens under a reservation of rights.

The majority admits that no one involved in this case agrees with its conclusion that this is not a reservation of rights case. Majority at 8. Indeed, the record makes clear that the Ardens, their personal attorney, Forsberg, and Hartford

all approached settlement negotiations with the understanding that Hartford reserved its right to ultimately deny coverage. Thus, contrary to the majority's assertion that "[t]he 'inherent' conflict of interest concern in *Tank* [*v. State Farm Fire and Casualty Co.*, 105 Wn.2d 381, 715 P.2d 1133 (1986)] did not fully materialize," majority at 10, the Ardens, no less than the insureds in *Tank*, faced the risk of paying any judgment or settlement. *See Tank*, 105 Wn.2d at 389 ("In a reservation of rights defense, it is the insured who may pay any judgment or settlement. Therefore, it is the insured who must make the ultimate choice regarding settlement."). Moreover, it is not necessary that the risks this court highlighted in *Tank* "fully materialize" in order to recognize the heightened obligations of the insurer and defense counsel. These obligations, including defense counsel's duty of loyalty and of full and ongoing disclosure, arise due to "the *potential* conflicts of interest between insurer and insured *inherent* in this type of defense." *Id.* at 387 (emphasis added). They undoubtedly arose in this case.

At the end of the day, the majority's misunderstanding of the relationship between Hartford, the Ardens, and Forsberg does not drive its analysis. Nonetheless, it introduces confusing dicta that I cannot endorse. I would hold simply that summary judgment was proper based on the Ardens' failure to establish damages, and affirm the Court of Appeals.

Stephens, J.
Gerla McCld, J.
González, CJ.
Fairhurst, CJ.