[No. 7673-6-I.   Division One.   December 1, 1980.]

TOM BLY, *Appellant,* v. DAVID HENRY,
ET AL, *Respondents.*

*Tom Bly,* pro se.

*Russ Juckett, Prosecuting Attorney, Steven Henley, Deputy, T. H. Neal, W. C. Wagner, Cody, Hatch & Bedle,* and *Arden J. Bedle,* for respondents.

WILLIAMS, J.—This is an appeal from two orders of the Superior Court finding Tom Bly in contempt and confining him in jail for a total of 12 days.

The facts are these. Tom Bly, a frequent pro se litigant

in the Snohomish County Superior Court,[1] appeared in that court on May 10, 1979, representing himself in a civil action entitled "Tom Bly v. David Henry, et al." He was wearing a shirt with open collar. When the court asked him why he was not wearing a coat and tie in the courtroom as he had been previously ordered to do, Bly responded that he could not afford those articles of clothing. The court took judicial notice that Bly had recently been walking outside the courthouse wearing a coat and tie, found him in contempt, and sentenced him to 4 days in jail.

On May 17, 1979, Bly again appeared in court in the same cause, again without coat and tie. When asked by the court why he was not properly dressed, Bly stated that although he owned many coats and ties, he would not wear them because the court by its requirement was attempting to control him. The court found him in contempt, and sentenced him to 8 days in jail.

█ A court may require that persons appearing before it wear a coat and tie, if the requirement is "reasonably calculated to promote the orderly administration of justice." *Sandstrom v. State,* 309 So. 2d 17, 22 (Fla. Dist. Ct. App. 1975); *Friedman v. District Court,* 611 P.2d 77 (Alaska 1980). Contemptuous acts committed in the courtroom are punishable by summary proceedings, *Dimmick v. Hume,* 62 Wn.2d 407, 382 P.2d 642 (1963), and the court's jurisdiction attaches immediately after the contemptuous act is committed. *State ex rel. Ewing v. Morris,* 120 Wash. 146, 207 P. 18 (1922).

The court in *Sandstrom* stated on page 23 that:

The wearing of a coat and necktie in open court has been a long honored tradition. It has always been considered a contribution to the seriousness and solemnity of the occasion and the proceedings. It is a sign of respect. A "jacket and tie" are still required dress in many public places. The Supreme Court of the United State by "Notice to Counsel" advises that appropriate dress in

---

[1]Acting pro se, he has appealed six Snohomish County Superior Court judgments to this court.

appearing before that court is conservative business dress. Would anyone question that includes a coat and necktie?

In our judgment the court's order requiring appellant to wear a tie in court was a simple requirement bearing a reasonable relationship to the proper administration of justice in that court.

Bly's actions evince a persistent challenge to the discipline and order of the courtroom and a direct affront to the court's authority. The judge acted within his inherent power to preserve the decorum of the courtroom. *State v. Elwood,* 193 Wash. 514, 76 P.2d 986 (1938).

■ Bly also complains that the trial court ordered him not to use a tape recorder in the courtroom unless he followed the regular court rules and procedures. As a litigant appearing pro se, Bly is bound by the same rules of procedure and substantive law as everyone else. *State v. Fritz,* 21 Wn. App. 354, 585 P.2d 173 (1978). *Accord, Bonney Lake v. Delany,* 22 Wn. App. 193, 588 P.2d 1203 (1978); *State v. Miller,* 19 Wn. App. 432, 576 P.2d 1300 (1978).

The orders of contempt are affirmed.

SWANSON and ANDERSEN, JJ., concur.

SWANSON, J. (concurring)—I concur in the majority opinion's terse disposition of this appeal, but fear the sheer novelty of the circumstances which resulted in the contempt orders may obscure ready recognition of the central issue in the case without further amplification.

Appellant Bly seeks to classify this case as one involving an arbitrary imposition of a "dress code" in violation of his constitutional rights. A careful reading of the record makes it clear that this is not such a case. We express no opinion as to how we would resolve the issue of the proper imposition of a "dress code." Such a question must await further litigation. What is involved here is Bly's direct and continuing challenge to the trial judge's judicial authority. To put the issue into proper focus, a more detailed statement of the facts is necessary.

Bly appeared in the courtroom of Judge Wilson some-time in April of 1979 wearing a short–sleeved shirt, open at the collar. According to the court's order of contempt, because of Bly's somewhat unique status as a frequent pro se litigant, he was ordered to wear a coat and tie the next time he appeared in court. On May 10, 1979, Bly appeared in court while representing himself in a civil action. Bly was not wearing a coat and tie, and the judge noted for the record that for reasons of preserving a level of decorum in the courtroom and because Bly appeared "in front of this court more than most attorneys", Bly had previously been told to wear a coat and tie. The judge asked Bly why he was not so attired, and Bly responded that he could not afford a coat and tie. The judge then took judicial notice that he had previously seen Bly parading with some sort of signs in front of the court building wearing a coat and tie.[2] He therefore found Bly in contempt and renewed his direc-tive to wear a coat and tie.

On May 17, 1979, Bly again appeared in Judge Wilson's courtroom, and, again, he was without a coat and tie. The judge asked why, and Bly responded that he could not afford coats, ties and suits, and that he had no wife to launder them, and that he could not afford to use a com-mercial laundry. However, Bly then admitted that

> I own many coats, many shirts, many neckties; but the one thing is plain and simply that since you issued your order the last time that you are bound and determined in your own way to make me look like one of these people. I'll tell you one thing: I'll join a nudist colony if a mode of dress has anything whatever to do with appearing to look like an attorney.

Later, the judge asked Bly if he had a coat, whether he would put it on. Bly's response was as follows:

> I certainly would not. I plain and simply would not, because as I say, you are controlling my dress; you

---

[2]In his order of contempt dated May 10, 1979, the judge further found that he had seen Bly outside the judge's personal residence on May 2, 1979, wearing a coat and tie.

already attempt to control my mind, you tell me what I should think and so forth, and it just isn't going to be.

Finally, the judge indicated that he had brought a coat of his own for Bly to wear while in court, and Bly stated, "I wouldn't put it on my back after being on yours." Bly was then again found in contempt for his failure to comply with the court's order.

The question is not whether a judge can require laymen to conform to some type of "dress code"; the record makes clear that with regard to other persons who had appeared before Judge Wilson no question was ever raised regarding proper attire. However, it was Bly's status as a frequent pro se litigant and the court's desire to preserve a level of decorum consistent with the seriousness and solemnity of court proceedings that prompted the judge's directive that Bly be properly dressed. It was those same factors that made the order reasonable.

We must uphold a trial judge's reasonable use of authority to conduct legal affairs in his own courtroom. Judge Wilson gave Bly every opportunity to comply with his order. Bly offered no reasonable explanation, nor reason nor excuse, for his failure to comply. Compliance placed no unreasonable burden upon him. This is simply a case where an experienced litigant with many pro se court appearances was deliberately and contemptuously "baiting" the trial judge. We cannot condone such open defiance of the judge's authority. Under the uncommon and peculiar circumstances of this case, we uphold the trial court's decision.

ANDERSEN, J. (concurring)—I also concur with Judge Swanson's opinion in this case.

Reconsideration denied March 3, 1981.

Review denied by Supreme Court May 8, 1981.