IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

BLAKE LARSON,

        Appellant,

    v.

KLUANE BOHN,

        Respondent.

No. 87216-8-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — Blake Larson, appearing pro se, submitted a petition to establish parentage, and set a parenting plan and residential schedule. Kluane Bohn responded and did not dispute that Larson is the father,[1] and indicated that she would be asking the court to approve her parenting plan and a request for child support. The court sent Larson notice of the trial date. He did not appear. The court proceeded with trial, heard Bohn's testimony, accepted her proposed orders, and issued final orders that followed Bohn's request and not those proposed by Larson. Larson appealed the court's orders, and subsequently moved to vacate them under CR 60(b). The court denied Larson's CR 60(b) motion, which Larson also appealed. This court granted Larson's request to consolidate the two appeals. Finding no error, we affirm.

---

[1] Bohn informed the court that Larson had actually signed an acknowledgment of paternity but never filed it with the State.

FACTS

Larson and Bohn lived together when their child was born in 2019. Larson moved out of Bohn's residence around June 2020.

In April 2021 Larson, proceeding pro se, filed a petition to establish parentage, and set a parenting plan and residential schedule.[2] In his petition, Larson agreed to accept legal paper at a Spokane, Washington address. The parentage form also notified Larson that if the address he provided changed before the case ends, he "***must notify all parties and the court clerk in writing.***"

Bohn notified Larson in May that she obtained legal representation. Bohn filed a response to Larson's petition in June. In her response, Bohn did not dispute that Larson was their child's father.[3] She asserted that the child has lived in Idaho since September 2020. She also indicated that she did not agree with everything Larson proposed and would ask the court to approve her proposed parenting plan and request for child support. Bohn did not submit proposed orders with her response.

The court issued a case schedule order to both parties in June 2021. The order was sent to Bohn's attorney via email, while delivered through U.S. postal mail to Larson, using the same address he provided in his petition. At the first pre-trial hearing on January 6, 2022, only Bohn's attorney appeared. Bohn's counsel disclosed that he had not heard from Larson, but also had been unable to reach his own client. Counsel asserted that Bohn was "the petitioning party at this point," but noted that his office had

---

[2] Larson also submitted a child support schedule worksheet indicating that Bohn made slightly more income than Larson.

[3] Bohn indicated that genetic testing is not needed and that she did not object to amending the birth record to reflect Larson is their child's father, as long as he was willing to sign and record acknowledgment of paternity.

not been able to reach Bohn to get documents signed or mediation set up and that he had not heard as to whether Larson planned to move forward with his petitions. Counsel proposed continuing the hearing on the basis that mediation had not been completed and that counsel would send a letter out to both parties letting them know that the matter either be completed or dismissed. The court continued the hearing for lack of mediation.

The court in January 2022 sent an amended case schedule order to both parties, via email to Bohn's attorney and U.S. postal mail to Larson at the Spokane address he provided in his petition. The order indicated that the next pretrial conference was set for May 26 and that trial was scheduled for June 6.

At some point before the May 26 pretrial hearing, Larson provided the court with his business email address. On May 25, the trial judge's judicial assistant sent an email to the parties explaining that the case scheduling order mistakenly set the time for the hearing to be 9 a.m., when it should be 10 a.m.[4]

The May 26 pre-trial hearing took place via videoconference. Bohn's attorney was present, but Larson was not. Bohn's counsel told the court, "I don't know why Mr. Larson isn't here. But we have not yet mediated in terms of this matter. And it's his petition. I wasn't sure what his plans were, but my understanding is he is going to go forward with it….I understand from my client in an e-mail yesterday that she believes he's still going forward, but he hasn't appeared at, really, anything since filing." The court decided to leave the case set for trial but indicated that if Larson showed up, the matter would be continued for mediation. Bohn's counsel notified the court that if Larson

---

[4] The email was immediately sent out after the judicial assistant realized her first email to Larson had a typo in Larson's email address.

did not show up, he would be prepared to have his client present brief testimony to support what Bohn would be asking in terms of a parenting plan. On June 2, the court emailed both Larson and Bohn's attorney, again, informing them that the pro forma trial on June 6 will go forward at 9:00 am.

On the day of trial, Bohn and her counsel were present. Larson did not appear. Bohn was sworn in and gave testimony. Bohn presented and testified in support of her proposed parenting plan and child support schedule worksheet. Bohn testified that when Larson filed his petition, he did not provide her with any financial information such as tax returns or business records. Bohn testified that she could not say for certain what Larson actually makes in terms of his business, so she used the Washington state published median Census Bureau figures to calculate Larson's net income and asked the court to use that figure. Bohn testified that since their separation in June 2020, Larson had not paid any child support.

At the trial's conclusion, the court found Larson to be the legal parent of his and Bohn's child. The court signed findings and conclusions, final parenting plan, residential schedule, child support worksheet, and child support order presented by Bohn. The court granted Bohn's request for child support, including more than $14,000 past due from the time Larson moved out of the home. Larson retained counsel and timely filed a notice of appeal on all the court's orders.

While the appeal was pending, on November 16, 2022, Larson filed a Motion to Vacate Judgment under CR60(b)(1), (4) and (11). Larson submitted a declaration explaining that he did not recall receiving several correspondences from the court. He asserts that he did "not recall receiving" the first case scheduling order because he

moved in November 2021; that he did not attend the first pre-trial conference because he did not have the case scheduling order; and that he did not attend the second pre-trial conference because he did not receive the updated case scheduling order. He admitted that he did not provide the court with an updated mailing address, but said the reason was because he believed the matter would be settled through mediation. He admitted he was the one who provided his business email address to the court, but asserted that he did not receive the court's June 2 email until after June 6 because he was out of town the weekend of June 4-5 and because the email from the court was "buried."

The court[5] denied Larson's motion to vacate. The court held that:

> After a review of the court file and records contained therein, the arguments of counsel and applicable statutes and rules, the court finds that good cause exits to deny the order. The matter was properly set for trial with notice provided to Mr. Larson, who prior to trial had represented himself in this matter. Mr. Larson was the petitioner and was responsible for notifying the court of any changes to his address and contact information. Mr. Larson failed to appear at the pretrial and failed to appear at trial. At trial, Ms. Bohn appeared and testified. At the conclusion of the trial, the court entered the final orders presented by Ms. Bohn. Mr. Larson subsequently appealed the trial court's decision and at the same time sought to vacate the orders. Mr. Larson has not shown good cause exits to grant the motion.

In addition to denying his motion, the court awarded Bohn attorney fees in the amount of $1,000.

Larson later filed a motion for reconsideration of the denial of the motion to vacate. This motion was heard before a different judge because the judge who denied

---

[5] The matter was heard before a different judge than the judge who presided over trial.

5

the motion to vacate had subsequently recused himself.[6] The newly assigned judge declined to consider Larson's motion for reconsideration because it believed it did not have the authority to do so. Larson appealed the denial of the CR 60(b) motion and the court's ruling declining consideration of Larson's motion for reconsideration.

Division Three of this court granted Larson's motion to consolidate his appeals and then administratively transferred the matter to Division One of this court.

DISCUSSION

CR 60(b)(1)

Larson argues that the trial court erroneously denied his motion to vacate by failing to consider mistake or excusable neglect under CR 60(b).

We review a trial court's denial of a motion to vacate a judgment under CR 60(b) for an abuse of discretion. Mitchell v. Wash. State Inst. of Pub. Pol'y, 153 Wn. App. 803, 821, 225 P.3d 280 (2009). To determine that the trial court abused its discretion, we must find that the "'exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons.'" Id. (quoting Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995)). We may overturn the trial court's decision only if the decision "'rests on facts unsupported in the record or was reached by applying the wrong legal standard'" or even when using the correct legal standard, the trial court "'adopt[ed] a view that no reasonable person would take'" or "'arrive[d] at a decision 'outside the range of acceptable choices.'" Id. at 822 (internal quotation marks omitted) (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

---

[6] The judge recused himself after Larson, unbeknownst to his attorney, was waiting on benches outside the judge's courtroom around 5:30 pm with signs directed at the judge in an attempt to talk to the judge about his ruling denying Larson's motion to vacate.

CR 60(b) provides:

> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order . . .[7]

Relief from judgment based on excusable neglect requires an analysis of not only a litigant's mental state but also other circumstances, including "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, [and] the reason for the delay, including whether it was within the reasonable control of the movant." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993).

An appeal from a denial of a CR 60(b) motion is limited to the propriety of the denial not the impropriety of the underlying judgment. Bjurstrom v. Campbell, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980). In addition, because a CR 60(b) motion "is addressed to the [trial court's] sound discretion," we do not address arguments not made before the trial court. Jones v. City of Seattle, 179 Wn.2d 322, 338, 314 P.3d 380 (2013); In re Marriage of Wherley, 34 Wn. App. 344, 348, 661 P.2d 155 (1983).

Larson relies on Matter of Marriage of Gharst, 25 Wn. App. 2d 752, 525 P.3d 250 (2023), to argue that he should be relieved of the court's orders because of excusable neglect. Id. at 758. It is true that "[a] party may obtain CR 60(b) relief based on excusable neglect even if the party was not blameless in contributing to the need for

---

[7] Despite having identifed other subsections in CR 60(b) as a basis for vacating his motion below, Larson only presents argument related to CR60(b)(1) on appeal. Thus, he has abandoned any argument on the basis of CR 60(b)(4) and CR60(b)(11).

relief." Id. at 754 (emphasis added). And that "excusable neglect may apply when a party's actions are attributable to negligence." Id. at 758 (emphasis added). But Gharst is distinguishable.

In Gharst, the respondent had missed the trial proceeding. Id. at 755. After the trial court entered a final divorce order favorable to the petitioner, respondent filed a motion to vacate under CR 60(b). Id. In her motion, she explained that she had suffered several ministrokes that resulted in a severe stroke, which significantly impacted her both neurologically and physically. Id. at 756. Despite her traumatic injuries, she still had made repeated attempts at contacting the petitioner regarding the court date. Id. On appeal, this court held that excusable neglect was supported because of the injuries sustained from her stroke. Id. at 759.

Gharst does not hold that a party shall obtain CR 60(b) relief based on excusable neglect, even if the party was not blameless.

In the instant case, Larson admits that he did not update the court with his mailing address. Larson concedes that he did receive emails from the court but did not see them until after the day of trial because he was out of town the weekend before trial and because the emails were "buried." Larson is the one who initiated the case with his petition. He was notified of the requirement to update any address changes with all parties and the court. Larson, nonetheless, argues that he should be granted relief because the trial court "mistakenly entered" child support orders that were "unfair." But we do not consider the impropriety of the underlying judgment when deciding whether the propriety of the denial of the motion to vacate. Bjurstrom, 27 Wn. App. at 450-51.

Larson also argues that in his motion to vacate and declaration in support, he

averred that he did not realize the matter was still in dispute, as the parties had previously decided to settle things through mediation and not go to court. It is undisputed that the court and Bohn understood that the parties were to attempt mediation. Larson cites to his own declaration to support his claim that the parties agreed not to go to court. However, the only evidence he provides that the parties made such an agreement are unsupported assertions. Larson argues that he did not receive any communication from Bohn or her counsel regarding mediation, but does not explain how lack of pursuing mediation by either party amounts to excusable neglect for failing to appear for trial or any of the prehearing conferences.[8]

Larson's passing citation to Matter of C.E.C.L., No. 84156-4-I (Wash. Ct. App. Apr. 10, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/841564.pdf., an unpublished case,[9] is not helpful. C.E.C.L. involved reversing a denial of a motion to vacate under CR 60 following a default judgment terminating a father's parental rights. Id. at 1. In that case, the Department of Children, Youth, and Families knew it sent notice to a hotel where it knew the father was no longer residing, which is why it served notice by publication. Id. at 7. The record established that the father had been in regular contact with his dependency attorney and that attorney testified that he "missed" and did not open or read the notice of the termination petition. Id. at 2. The attorney testified that had he read the email notice of the proceedings, he would have entered a notice of appearance and an answer to the petition. Id. at 2. Unlike the father in C.E.C.L., Larson is the party who initiated the petition in the instant case. And he was sent notice of the

---

[8] As part of its domestic case schedule orders, the court ordered both parties to attend mediation.

[9] A party may cite to an unpublished case as persuasive authority. GR 14.1.

trial date by the court at the address and email that he provided.

The court hearing Larson's motion to vacate reviewed the court file and records, held a hearing and considered arguments of counsel. The court found that the matter was properly set for trial with notice provided to Larson, who prior to trial had represented himself.[10] The court found that "Larson was the petitioner and was responsible for notifying the court of any changes to his address and contact information." The court found that at trial, Larson did not appear, Bohn did appear and testified prior to the court entering its final orders presented by Bohn.

Larson has not established that the trial court abused its discretion in denying the motion to vacate.[11]

Due Process

Despite failing to appear for trial, Larson appeals the court's orders stemming from that trial claiming a violation of his constitutional procedural due process rights.

A party may raise a claim of "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3). "[T]he issue of denial of procedural due process in a civil case" may be raised for the first time on appeal. Conner v. Universal Utils., 105 Wn.2d 168, 171, 712 P.2d 849 (1986).

---

[10] As a litigant appearing pro se, Larson is held to the same rules and standards of procedure and substantive law as attorneys. Bly v. Henry, 28 Wn. App. 469, 471, 624 P.2d 717 (1980).

[11] We need not consider Larson's claim that the court erred in awarding Bohn attorney fees because that claim rests entirely on his argument that the court erred in denying his motion to vacate. Larson also abandoned his appeal of the superior court's ruling that it did not have authority to consider Larson's motion for reconsideration. Larson failed to assign error to the ruling or present any argument. RAP 10.3(a)(6) (requiring an appellant's brief to provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record"); see also Jackson v. Quality Loan Serv. Corp., 186 Wn. App. 838, 845, 347 P.3d 487 (2015).

We review alleged violations of due process de novo. In re Welfare of A.G., 160 Wn. App. 841, 844, 248 P.3d 611 (2011). "The due process clause of the Fourteenth Amendment protects a parent's right to the custody, care, and companionship of her children." In re Welfare of Key, 119 Wn.2d 600, 609, 836 P.2d 200 (1992). "That right cannot be abridged without due process of law." Id. "In the context of a dependency proceeding, due process requires that parents have notice, an opportunity to be heard and defend, and the right to assistance of counsel." In re Dependency of H.W., 70 Wn. App. 552, 555-56, 854 P.2d 1100 (1993).

In the instant case, Larson argues that his procedural due process rights were violated because of the court's failure to enforce local court rules.[12] First, Larson argues that Bohn did not follow the court's case scheduling order and waited to present her proposed parenting plan and child support worksheets until trial. Second, Larson argues the court allowed trial to proceed without requiring Bohn to account for what efforts she took to engage Larson in mediation.

Larson contends that Bohn's failure to provide her proposed orders to Larson prior to trial and failure to attempt mediation prior to trial meant Larson "was not on notice of any dispute for trial, or that Respondent would request at trial judgments beyond what she asserted in the pleadings."

However, Bohn responded to the petition by indicating that she did not agree with everything Larson proposed. Her response also states that she would be asking the

---

[12] Larson argues that the trial court erred and violated his due process rights when it failed to follow LSPR 94.04(m) and LSPR 94.04(r). LSPR 94.04(m)(2) provides that "[s]anctions can be imposed for failure to follow the court's scheduling order and its deadlines." LSPR 94.04(r)(1) provides that "All contested matters shall be mediated prior to trial. Parties shall follow the court's scheduling order deadlines or sanctions may be imposed."

court to approve her proposed parenting plan and request for child support. Thus, Larson was on notice that there were disputes for trial. While it is true that the record establishes that Bohn did not file her proposed parenting plan and child support worksheet until trial, and that Bohn did not present any evidence of her efforts to engage Larson in mediation prior to trial, those are issues Larson could have raised at trial. In other words, Larson now seeks to contest the court's decision by asserting procedural errors that he could have raised had he appeared at trial.

A party cannot claim manifest error when the alleged violation could have been addressed through a timely objection at trial. State v. Powell, 166 Wn.2d 73, 82, 206 P.3d 321 (2009); RAP 2.5(a)(3). Larson, the petitioner, had notice of trial, the opportunity to appear and defend, including raising any objection at trial to Bohn's proposed orders.[13]

It is well settled in our courts that when a party fails to appear on the scheduled trial date, the trial may proceed as a single-party hearing, and the resulting judgment is one on the merits. See Marriage of Olsen, 183 Wn. App 546, 554, 333 P.3d 561 (2014). The trial court was well within its authority to proceed with the pro forma trial and to rule on the merits of the evidence presented. By failing to appear at both the pretrial proceedings and trial, Larson has waived any objections to the alleged procedural errors he now raises on appeal.[14] See State v. Kalebaugh, 183 Wn.2d 578, 583, 355 P.3d 253 (2015); RAP 2.5(a).

---

[13] We note that the trial court had indicated at the previous pre-trial hearing that if Larson had showed up the court would have continued the matter for mediation.

[14] Larson's reliance on In re Marriage of Parker, 78 Wn. App. 405, 897 P.2d 402 (1995), is inapposite. Parker involved the vacation of a party's voluntary dismissal of a dissolution petition and did not involve a claim asserting a violation of procedural due process after failing to appear for trial.

Larson has not met his burden to establish a manifest constitutional error warranting review of his claim raised for the first time on appeal. RAP 2.5(a)(3).

### Attorney Fees

Both Bohn and Larson request attorney fees on appeal.

A party must "include a separate section in [their] brief devoted to the request" for appellate attorney fees. Stiles v. Kearney, 168 Wn. App. 250, 267, 277 P.3d 9 (2012); RAP 18.1(b). This requirement is mandatory, and "requires more than a bald request for attorney fees on appeal." Id. Bohn's request is nothing more than stating Larson "should be ordered to pay the fees" Bohn has incurred. This is insufficient to warrant consideration. RAP 18.1.

Larson requests to be awarded attorney fees on appeal pursuant to RAP 18.1(b) and RCW 26.09.140. Under RCW 26.09.140, this court has the discretion to order a party to pay for the reasonable attorney fees and costs incurred by the other party in proceedings under chapter 26.09 RCW. Petitioning for a parenting plan falls under this chapter. We exercise our discretion and decline to award Larson attorney fees.

Affirm.

Coburn, J.

WE CONCUR:

Chung, J.                          Mann, J.